UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE VALERIO, ANIBAL TORRES, JR., | ) | |
| JOHNATHAN COLLAZO, and ULISES | ) | |
| GARCIA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 12 C 9985 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| TOTAL TAXI REPAIR & BODY SHOP, | ) | |
| LLC, DISPATCH TAXI MANAGEMENT | ) | |
| LLC, DISPATCH TAXI AFFILIATION, | ) | |
| INC., GFST, INC., SAVAS TSITIRIDIS, | ) | |
| and EVGENY FREIDMAN, individually | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ulises Garcia, Jose Valerio, Anibal Torres, Jr., and Johnathan Collazo

(collectively, "Plaintiffs") brought this action against Defendants Total Taxi Repair & Body

Shop, LLC ("Total Taxi"), Dispatch Taxi Affiliation, Inc. ("Dispatch Taxi"), Dispatch Taxi

Management, LLC ("Dispatch Management"), Savas Tsitiridis, and Evgeny Freidman

(collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 215 et. seq., the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/2 et

seq., and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1

et seq. (R. 1, Compl.) Garcia, Valerio, and Torres accepted Offers of Judgment pursuant to

Federal Rule of Civil Procedure 68. (See R. 63, Garcia's Acceptance of Defs.' Offer of J.; R. 64,

Valerio's Acceptance of Defs.' Offer of J.; R. 65, Torres's Acceptance of Defs.' Offer of J.)

After a three-day bench trial, the Court returned a verdict in favor of Collazo as to his claims

under the FLSA, IMWL, and IWPCA. (R. 77, Min. Entry.) Presently before the Court is

Plaintiffs' motion for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b). For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs filed this lawsuit against Defendants on December 14, 2012. (R. 1, Compl.) At all times material to this dispute, Plaintiffs were employed by Defendants to perform garage work, which included servicing and maintaining taxi cabs, servicing and installing meter equipment, and dispatching and scheduling employees. (*Id.* ¶ 13.) Plaintiffs alleged that Defendants violated the IWPCA by failing to pay Plaintiffs the statutory minimum wages. (*Id.* at ¶ 27.) In addition, Plaintiffs alleged that Defendants violated the FLSA and IMWL by failing to compensate Plaintiffs at a rate of one and one-half times their regular hourly rate of pay for all time worked in excess of forty hours in individual work weeks. (*Id.* ¶ 16, 22.) Plaintiffs . (*Id.* ¶ 19.)

On March 10, 2014, Plaintiffs Garcia, Valerio, and Torres accepted Defendants' Offers of Judgment. (R. 63, Garcia's Acceptance of Defs.' Offer of J.; R. 64, Valerio's Acceptance of Defs.' Offer of J.; R. 65, Torres's Acceptance of Defs.' Offer of J.) Plaintiffs recovered the following amounts: Garcia recovered $10,603.65 ($7,312.86 in backpay, and $3,290.79 in attorneys' fees); Valerio recovered $9,860.00 ($6,800.00 in backpay, and $3,060.00 in attorneys' fees); and Torres recovered $9,675.27 ($6,672.60 in backpay, and $3,002.67 in attorneys' fees). Each offer of judgment stated that the awarded amount "represents the total amount that Defendants shall be obligated to pay to Plaintiff (including costs and attorneys' fees that Plaintiff may have incurred to the date of this offer)." (R. 63-1, Garcia's Offer of J. at 1; R. 64-1, Valerio's Offer of J. at 1; R. 65-1, Torres's Offer of J. at 1.)

2

On March 25, 2014, following a three-day bench trial, the Court found for Collazo on all his claims, and entered a total judgment of $13,200. (R. 77, Min. Entry.) The Court awarded this amount based on its finding that Defendants' violations were willful, intentional, and committed with reckless disregard for the law. (*Id.*) The judgment was entered jointly and severally against each Defendant. (*Id.*)

After several attempts to secure Plaintiffs' awards from Defendants, Plaintiffs' counsel prepared Citation Notices to Defendants' financial institutions, BMO Harris Bank, N.A. and Citibank. (R. 79, Citation to Discover Assets; R. 109-3, Ex. C, Engelhardt Decl. at 5-6.) The Court issued these citations on behalf of Valerio, Torres, and Garcia on April 1, 2014, (R. 79, Citation to Discover Assets; R. 109-3, Ex. C, Engelhardt Decl. at 5-6), and on behalf of Collazo on April 21, 2014, (R. 93, Citation to Discover Assets; R. 109-3, Ex. C, Engelhardt Decl. at 6). Citibank and BMO Harris Bank, N.A. answered the citations on April 7 and May 5, 2014, respectively. (R. 84, Citibank's Answer; R. 96, Harris Bank's Answer.) The parties filed Satisfactions of Judgment for Valerio, Garcia, and Torres's Offers of Judgment on April 17, 2014, (R. 87, Valerio's Satisfaction of J; R. 88, Torres's Satisfaction of J; R. 89, Garcia's Satisfaction of J.), and for Collazo on May 1, 2014, (R. 95, Collazo's Satisfaction of J.).

On September 16, 2014, Valerio, Torres, Garcia, and Collazo jointly filed a motion for attorneys' fees and costs, (R. 109, Mot. Atty'ys' Fees at 1), and supporting memorandum, (R. 110, Pls.' Mem.). Plaintiffs seek attorneys' fees and costs in the amount of $157,495.00, and $3,452.36 respectively.[1] (*Id.*) On October 23, 2014, Defendants filed a response to Plaintiffs'

---

[1] Plaintiffs' motion for attorneys' fees requests costs totaling $3,690.36, (R. 109, Mot. Att'ys' Fees at 1), but the itemized Bill of Costs they submitted totals $3,452.36, (R. 109-9, Pls.' Bill of Costs). Plaintiffs have not provided any line item breakdown explaining how they arrived at the higher figure. Therefore, the Court will analyze Plaintiffs' request using the lower figure reported in the itemized Bill of Costs.

3

motion for attorneys' fees and costs. (R. 117, Def.'s Resp.) Plaintiffs replied on November 6,

2014. (R. 118, Pls.' Reply.)

**LEGAL STANDARD**

The FLSA provides that, in addition to any judgment awarded, plaintiffs may recover

reasonable attorneys' fees. 29 USC § 216(b); *see also Batt v. Micro Warehouse, Inc.*, 241 F.3d

891, 893 (7th Cir. 2001). The IMWL also provides for attorneys' fees to the prevailing party.

820 Ill. Comp. Stat. 105/12(a).

To calculate an appropriate fee award, courts start with the "lodestar" amount,

determined by "multiplying a reasonable hourly rate by the number of hours reasonably

expended on the litigation." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707

(7th Cir. 2001); *see also Hensely v. Eckerhart*, 461 U.S. 424, 433 (1983). Under this approach,

the party seeking fees bears the burden of proving the reasonableness of the hours worked and

rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). A good faith effort must be made

to exclude excessive, redundant, or unnecessary hours. *Id.* at 434. The Court, for its part, must

exclude hours it deems inadequately documented or not reasonably expended on the litigation.

*Id.* at 433-34; *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

Once the lodestar amount has been determined, the Court may adjust the award based on

a number of factors, including "the complexity of the legal issues involved, the degree of success

obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747,

748 (7th Cir. 2010). "The standard is whether the fees are reasonable in relation to the difficulty,

stakes, and outcome of the case." *Id.* (quoting *Connolly v. Nat'l. Sch. Bus Serv., Inc.*, 177 F.3d

593, 597 (7th Cir. 1999)); *see also Hensley*, 461 U.S. at 430 n.3 (1983) (listing "the novelty and

difficulty of the questions" and "the skill requisite to perform the legal service properly" as two

4

of the factors determining a fee award). When making reductions, a court cannot simply

"eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive

to the court." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996)

(citations and internal quotation marks omitted). Rather, it must provide a "concise but clear

explanation of its reasons" for any reduction. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409

(7th Cir. 1999).

## ANALYSIS

### I. Local Rule 54.3

Local Rule 54.3 sets forth the procedures that must be followed in connection with fee

applications in this District. The rule imposes on counsel for the parties the obligation to "confer

and attempt in good faith to agree on the amount of fees or related nontaxable expenses that

should be awarded," and to exchange certain specified information. N.D. Ill. L.R. 54.3(d).

"[Local Rule 54.3] aims to promote amicable resolution by encouraging the parties to define

their areas of actual disagreement regarding fee awards." *Tenner v. Zurek*, 168 F.3d 328, 331

(7th Cir. 1998) (internal quotation marks omitted). If a compromise cannot be reached, the party

seeking fees may file a motion, attaching a joint statement prepared by both parties. N.D. Ill.

L.R. 54.3(e). The joint statement must specify the total amount of fees or related expenses

sought, the total amount which the responding party believes should be awarded, and "a brief

description of each specific dispute remaining between the parties as to the fees or expenses."

*Id.* "Rule 54.3 was adopted by the district court as a means of reducing the time spent on fee

disputes." *Sears, Roebuck & Co. v. Menard, Inc.*, No. 01 C 9843, 2004 WL 2423964, at *1

(N.D. Ill. Sept. 23, 2004). The rule compels the parties to focus on specifics, and should result in

the presentation of "discrete objections to specific items in the fee petition that can be ruled upon with relative dispatch." *Id.*

According to Plaintiffs' counsel, the parties' attorneys discussed resolving the fee petition several times without a successful resolution. (R. 109-3, Ex. C, Engelhardt's Decl. at 6.) The parties could not agree on hourly rates, or other contested issues. (*Id.*) The parties did, however, in compliance with Rule 54.3(e), submit a Joint Statement that sufficiently delineates the remaining outstanding issues between them. (R. 109-1, Ex. A, Local Rule 54.3 Joint Statement.) Therefore, based on the Joint Statement, the Court proceeds to consider an appropriate fee award for Plaintiffs.

## II.    Lodestar Amount

Determination of an appropriate award begins with the lodestar, which results from multiplying the number of hours expended by a reasonable hourly rate. *Small*, 264 F.3d at 707. As the party seeking the award of attorneys' fees, Plaintiffs bear the burden of establishing the reasonableness of the time expended and hourly rates charged by their attorneys. *Hensley*, 461 U.S. at 437; *Spellan v. Bd. of Ed. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995). Plaintiffs request a total of $157,495.00 in attorneys' fees calculated as follows:

| Attorney | Hourly Rate | Hours | Total per Attorney |
|---|---|---|---|
| Engelhardt (Partner) | $425 | 275.5 | $117,087.50 |
| Thoma (Associate) | $250 | 150.8 | $37,700.00 |
| Schuman (Associate) | $250 | 8.5 | $2,125.00 |
| McGaughy (Associate) | $250 | 0.75 | $187.50 |
| Castro (Law Clerk) | $150 | 1.6 | $240.00 |
| Smith (Paralegal) | $100 | 1.6 | $155.00 |

| | TOTALS | 438.7 | $157,495.00 |
|---|---|---|---|
| | | | |

(R. 109, Mot. Att'ys' Fees at 3.)

**A.     Whether Plaintiffs' attorneys' hourly rates are reasonable**

The Court first addresses the reasonableness of the hourly rates sought by Plaintiffs'

attorneys. A "reasonable" hourly rate is "one that is derived from the market rate for the services

rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal

quotation marks and citation omitted). Thus, an attorney's actual billing rate for similar

litigation is appropriate to use as the market rate. *Id.* If an attorney uses contingent fee

arrangements, the "next best evidence" of the attorney's market rate is "evidence of rates

similarly experienced attorneys in the community charge paying clients for similar work and

evidence of fee awards the attorney has received in similar cases." *Spegon*, 175 F.3d at 555.

The U.S. Court of Appeals for the Seventh Circuit has "expressed a preference for third party

affidavits that attest to the billing rates of comparable attorneys." *Pickett*, 664 F.3d at 640. The

party seeking fees "bears the burden of producing satisfactory evidence—in addition to the

attorney's own affidavits—that the requested rates are in line with those prevailing in the

community." *Id.* (internal quotation marks and citation omitted). If that burden is satisfied, the

burden shifts to the other party to offer evidence that sets forth "good reason" why a lower rate

should be awarded. *People Who Care*, 90 F.3d at 1313 (internal quotation marks and citations

omitted). If the party seeking fees fails to carry its burden, the Court may properly "make its

own determination of a reasonable rate." *Pickett*, 664 F.3d at 640 (citation omitted).

## 1.    Karen Engelhardt's rate

Plaintiffs seek a rate of $425 per hour for the time Karen Engelhardt, a partner with over 33 years of experience, expended on the case. (R. 109, Mot. Att'ys' Fees at 3; R. 110, Pls.' Mem. at 13-14.) In support of this rate, Plaintiffs have submitted declarations by Engelhardt and two other attorneys, as well as the *Laffey* Matrix ("the Matrix").[2] (R. 109-3, Ex. C, Engelhardt Decl.; R. 109-5, Ex. E, Hagerty Decl.; R. 109-6, Ex. F, Williams Decl.; R. 109-8, Ex. H, Matrix.) Defendants argue that Engelhardt's hourly rate should be reduced to $390 due to her lack of expertise in FLSA litigation, and because her proposed rate exceeds the market rate for FLSA cases. (R. 117, Defs.' Mem. at 12-14.) Defendants do not explain how they arrived at the $390 hourly rate.

The evidence put forth by Plaintiffs in support of Engelhardt's requested rate is unconvincing. First, Engelhardt's declaration offers no justification for the proposed $425 hourly rate. As noted by Defendants, Engelhardt does not profess to have any expertise in FLSA litigation; rather her practice focuses on ERISA litigation and other employment-related matters. (R. 109-3, Ex. C, Engelhardt Decl. at 3.) Her FLSA experience is limited to a single uncontested case in which the court permitted a $400 hourly rate. (*Id.* at 4 (citing *Alvarez, et al. v. Chudo Constr. LLP, et al.*, 12 C 5539 (N.D. Ill. Nov. 30, 2012) (Lefkow, J.))); *see also People Who Care*, 90 F.3d at 1310 ("The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." (internal quotation marks and citation omitted)). Engelhardt charges at a reduced hourly rate of $200-$225 for other cases pertaining to

---

[2]  The *Laffey* Matrix is a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases. *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014)

employment law. (R. 109-3, Ex. C, Engelhardt Decl. at 4; R. 110, Pls.' Mem. at 14.) This evidence fails to establish the reasonableness of a $425 hourly rate.

Second, the declarations provided by Ryan Hagerty and Christopher Williams, Chicago-area attorneys with experience in FLSA matters, offer limited support for Engelhardt's requested rate. Both Hagerty and Williams have received fee awards at an hourly rate ranging from $375 to $425 in recent years. (R. 109-5, Ex. E, Hagerty Decl. at 3; R. 109-6, Ex. F, Williams Decl. at 2-3.) However, both Hagerty and Williams have extensive experience litigating FLSA and IWPCA claims, whereas Engelhardt does not. (R. 109-5, Ex. E, Hagerty Decl. at 1; R. 109-6, Ex. F, Williams Decl. at 1-2.) Williams is an expert in wage-and-hour law and has litigated hundreds of cases under the FLSA and IWPCA. (R. 109-5, Ex. E, Hagerty Decl. at 1-2.) Similarly, Hagerty has litigated "numerous matters" under the FLSA, IMWL, and IWPCA. (R. 109-6, Ex. F, Williams Decl. at 1.) Neither declarant provides market rate evidence other than that of their own fee awards. Engelhardt's proposed rate is at the highest end of the hourly rates awarded to the declarants, but there is a disparity of experience between Engelhardt and the declarants in litigating FLSA matters. Defendants argue that "neither [d]eclaration establishes a prevailing market rate for counsel with modest experience with FLSA cases." (R. 117, Defs.' Mem. at 14.) Plaintiffs offer no response to this argument in their reply. The Court must use the declarations to determine what "attorneys of comparable skill, experience, and reputation charge for similar work[,]" *Pickett,* 664 F.3d at 641, and due to the disparity in experience in FLSA matters between Engelhardt and the declarants, the Court finds the declarations of limited probative value. *See Johnson v. G.D.F., Inc.,* 668 F.3d 927, 933 (7th Cir. 2012) (finding that the district court is entitled to determine the probative value of each affidavit submitted in support of establishing a market rate for attorney's fees in FLSA case).

Finally, Plaintiffs submit the Matrix to support Engelhardt's requested rate. (R. 109-8,

Ex. H, Matrix.) Plaintiffs argue that Engelhardt's requested rate of $425 is far less than the $510

hourly rate recommended for counsel with over twenty years of experience. (R. 110, Pls.' Mem.

at 14.) Defendants, citing *Spegon* and *Small*, counter that because the Matrix was created to

advise litigants of reasonable attorney's fees in Title VII cases, it is not relevant in FLSA suits,

which are traditionally less complex. (R. 117, Defs.' Mem. at 14.)

Although the Court cannot specifically locate any Seventh Circuit case holding that

the Matrix is inapplicable in FLSA cases, the Seventh Circuit has stated that "[h]ourly rates

awarded in non-FLSA overtime cases are not particularly relevant as evidence of [an attorney's]

market rate." *Spegon*, 175 F.3d at 555 n.6; *see also Small*, 264 F.3d at 707-08 (the court

observed that "FLSA cases are less complex than Title VII and other employment-related civil

rights litigation"). However, the Seventh Circuit has warned against assuming that the market

*must* distinguish between FLSA and Title VII cases without evidence to support such a

conclusion. *Johnson*, 668 F.3d at 933; *see also Montanez*, 755 F.3d at 554. Neither the

declarations nor the parties themselves present such evidence in this case. Thus, the Court will

consider the Matrix in determining the reasonableness of hourly rates in this case, but notes that

its' persuasiveness is severely limited by several factors.

First, the Seventh Circuit has never formally adopted the Matrix and has stated only that

it "can assist the district court with the challenging task of determining a reasonable hourly rate."

*Pickett*, 664 F.3d at 648. Second, courts in this District primarily rely on the Matrix as only one

factor in determining a reasonable rate. *See Sandra T.-E. v. Sperlik*, No. 05 C 473, 2012 WL

1107845, at *1 (N.D. Ill. Apr. 1, 2012) (listing cases). Third, the Matrix makes hourly rate

recommendations based upon years of experience, and not years of experience in a specific legal

expertise, and is therefore of limited value. *See Obrycka v. City of Chi.*, No. 07 C 2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013) (declining to consider the Matrix in determining a reasonable hourly rate because it fails to account for years of experience in a specific legal expertise). Last, courts in this District have observed that the Matrix rates are significantly higher than those charged in this District. *See Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *5 (N.D. Ill. Feb. 13, 2012) (noting the significantly higher market rates in Washington, D.C.); *Elusta v. City of Chi.*, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010) (same); *see also Montanez*, 755 F.3d at 554 (expressing skepticism about applying the Matrix outside of Washington, D.C.). Plaintiffs did not address the appropriateness of applying the Matrix in Chicago given the hourly rate differential. The Matrix recommends that attorneys with 20 years of experience should receive a $510 hourly rate. (R. 109-8, Ex. H, Matrix.) This is in excess of the highest rate given in most recent FLSA cases. Thus, the Court has considered the Matrix, but ultimately finds it unpersuasive in this case.

Another metric for assessing the reasonableness of an attorney's hourly rate is the fee awards from prior similar cases. *See Spegon*, 175 F.3d at 557 (holding that when attorneys' use contingent fee agreements, evidence of fee awards the attorney has received in similar cases is the next best evidence in determining an hourly rate). A recent decision from this District surveyed other FLSA cases in this Circuit, finding that "district courts have not awarded an hourly rate higher than $450 in similar cases." *Johnson v. G.D.F., Inc.*, No. 07 C 3996, 2014 WL 463676, at *21 (N.D. Ill. Feb. 5, 2014) (finding $425 to be a reasonable hourly rate for an attorney with 42 years of FLSA experience); *see also De La Riva v. Houlihan Smith & Co.*, No. 10 C 8206, 2013 WL 5348323, at *5 (N.D. Ill. Sept. 24, 2013) (awarding lead counsel with many years of FLSA experience an hourly rate of $450). This would put Engelhardt's proposed rate

toward the top of awarded hourly rates. The Court finds that Engelhardt's recent hourly rate award of $400 in an FLSA suit is the most persuasive piece of evidence it has before it. *See Spegon*, 175 F.3d at 555; *see also Jeffboat, L.L.C. v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009) ("an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation"). Considering all the evidence before it, the Court concludes that a rate of $400 per hour is reasonable.

Defendants propose a rate of $390, arguing that *Lizak v. Great Masonry, Inc.*, No. 08-C-1930, 2010 WL 3001906 (N.D. Ill. July 29, 2010) demonstrates that FLSA cases award an hourly rate of $245 to $325. (R. 117, Defs.' Mem. at 13.) While Defendants are correct regarding the *Lizak* court's findings, the Court believes this 2010 case may not reflect the current market rates for FLSA litigation. *See Palar v. Blackhawk Bancorporation, Inc.*, No. 4:11-cv-04039-SLD-JEH, 2014 WL 4087436, at *6 (C.D. Ill. Aug. 19, 2014) (referring to the survey of hourly rates awarded in FLSA cases contained in *Lizak* as "outdated"). Other more recent cases, such as *Johnson*, reflect higher hourly rates, and the Court finds these cases more persuasive. Accordingly, the Court finds that $400 per hour is a reasonable market rate for Engelhardt's services on this case.

**2. Sarah Schumann's rate**

Plaintiffs also seek an hourly rate of $250 for Sarah Schumann, a third-year associate at Engelhardt's firm. (R. 109, Mot. Att'ys' Fees at 3; R. 110, Pls.' Mem. at 13.) Plaintiffs offer declarations from Hagerty and Williams to support their proposed rate. (R. 109-5, Ex. E, Hagerty Decl.; R. 109-6, Ex. F, Williams Decl.) Defendants propose an hourly rate of $200. (R. 117, Defs.' Mem. at 13.) Because Plaintiffs have neither provided a declaration from Schumann,

nor addressed her actual billing rate in their briefs, the Court must turn to the "next best evidence" of Schumann's market rate contained in Hagerty's and Williams' declarations. *Spegon*, 175 F.3d at 555. Each declaration states that a $250 hourly rate is "consistent with the rates charged by my firm for associates having less experience than . . . Ms [sic] Schumann." (R. 109-5, Ex. E, Hagerty Decl. at 3; R. 109-6, Ex. F, Williams Decl. at 4.) In addition, a recent survey of FLSA cases in *Johnson* revealed that associates received an hourly rate ranging from $225 to $300. *See Kurgan v. Chiro One Wellness Centers L.L.C.*, No. 10-cv-1899, 2014 WL 7330758 (N.D. Ill. Dec. 22, 2014) (in an FLSA case the court awarded associates between $250 and $300 based on experience); *Ingram v. World Security Bureau, Inc., et al.*, No. 11 C 6566, 2013 WL 6664782 (N.D. Ill. Dec. 17, 2013) (in an FLSA case the court awarded junior attorneys hourly rates of $250 and $225); *De La Riva*, 2013 WL 5348323, at *5 (in a FLSA case the court awarded an hourly rate of $300 for the junior attorney with several years of experience).

Therefore, Plaintiffs have met their burden in proving the reasonableness of their proposed rate, and accordingly, Defendants must provide "good reasons" for reducing the rate. *People Who Care*, 90 F.3d at 1313. Defendants again cite to *Lizak* to substantiate a reduction in Schumann's hourly rate. (R. 117, Defs.' Mem. at 14.) As the Court has previously explained, *Lizak* is no longer particularly probative of current market rates, and therefore the Court declines to reduce Schumann's hourly rate on this basis. Thus, the Court concludes that an hourly rate of $250 is reasonable in this case for the time expended by Schumann.

### 3.    Ryan Thoma's rate

Plaintiffs next request a rate of $250 per hour for Ryan Thoma, a first-year associate at Engelhardt's firm. (R. 109, Mot. Att'ys' Fees at 3; R. 109-4, Ex. D, Thoma's Decl. at 1.) In support of this request, Plaintiffs provide a declaration from Thoma, as well as Hagerty and

13

Williams, and the Matrix. (R. 109-4, Ex. D, Thoma's Decl.; R. 109-5, Ex. E, Hagerty Decl.; R. 109-6, Ex. F, Williams Decl.; R. 109-8, Ex. H, Matrix.) Defendants seek to reduce Thoma's hourly rate to $175. (R. 117, Defs.' Mem. at 12.)

Thoma's declaration states that his hourly rate is $195 in non-contingent fee pension fund matters and $220 in one case involving union representation. (R. 109-4, Ex. D, Thoma's Decl. at 3.) He further attests that these rates "are reflective of the generally reduced rates charged to unions and other similar clients." (*Id.*) Thoma's affidavit fails to establish the reasonableness of a $250 hourly rate. *See Pickett*, 664 F.3d at 640. Rather, because Thoma has charged at an hourly rate of $195 in other employment-related matters, his affidavit persuades the Court that an hourly rate of $195 is appropriate in this case. *See Jeffboat, L.L.C.*, 553 F.3d at 491.

Plaintiffs also offer declarations by Hagerty and Williams in support of their proposed market rate. Each declaration states that $250 is the current market rate for first-year associates working on employment cases, including wage-and-hour matters. (R. 109-5, Ex. E, Hagerty Decl. at 3; R. 109-6, Ex. F, Williams Decl. at 4.) However, based upon the fee awards in recent FLSA cases, this rate appears inappropriate for an inexperienced attorney. *See People Who Care*, 90 F.3d at 1312. In *De La Riva*, the court awarded an hourly rate of $300 to a junior attorney with several years of experience. 2013 WL 5348323, at *5. Conversely, in *Ingram*, an attorney with less than two years of experience received an hourly rate of $225. 2013 WL 6664782, at *3. These cases indicate that an hourly rate award of $250 for a first-year associate is excessive. Thus, as the declarations pertain to Thoma, the Court finds them of limited probative value. *See Johnson*, 668 F.3d at 933. Additionally, Plaintiffs also point out the Matrix suggests a rate of $250 for attorneys with 1-3 years of experience, (R. 110, Pls.' Mem. at 14-15;

14

R. 109-8, Ex. H, Matrix), but the Court has already noted that the Matrix's market rates are generally in excess of those charged in Chicago.

Therefore, similar to Engelhardt, the Court finds that the most persuasive evidence of an appropriate hourly rate is the $195 hourly rate that Thoma receives in other employment-related matters, and the Court's analysis of recent FLSA fee awards supports this conclusion. Defendants propose an hourly rate of $175, without explaining precisely how they arrived at this number, and cite to the survey of fee award rates in *Lizak*. (R. 117, Defs.' Mem. at 13.) However, as the Court explained above, the rates contained in *Lizak* are outdated, and later cases reveal an upward trend in hourly rate awards by courts in this District. Accordingly, the Court concludes that an hourly rate of $195 is reasonable in this case for the time expended by Thoma.

### 4. Jason McGaughy's rate

Plaintiffs seek a rate of $250 for fifth-year associate Jason McGaughy. (R. 109, Mot. Att'ys' Fees at 3; R. 110, Pls.' Mem. at 13.) Plaintiffs have submitted no declarations in support of this request, but Engelhardt briefly discusses his qualifications in her declaration. (R. 109-3, Ex. C, Engelhardt Decl. at 4.) Defendants seek to reduce McGaughy's hourly rate to $225. (R. 117, Defs.' Mem. at 12.) Because Plaintiffs have made no attempt to justify McGaughy's rate, the Court must make its own determination. *See Pickett*, 664 F.3d at 640 (when the fee applicant fails to carry his burden, the Court may properly "make its own determination of a reasonable rate" (citation omitted)). As discussed above, in reviewing *Johnson* and other recent FLSA cases in this District, the Court has determined that $250 is a reasonable hourly rate for an associate with several years of experience. Further, Defendants have failed to show any "good reason" for reducing McGaughy's rate. *People Who Care*, 90 F.3d at 1313. Therefore, the Court concludes that an hourly rate of $250 is reasonable in this case for the time expended by McGaughy.

15

### 5.     Javier Castro's rate

Plaintiffs seek an hourly rate of $150 for law clerk Javier Castro, a second-year law student. (R. 109, Mot. Att'ys' Fees at 3; R. 109-3, Ex. C, Engelhardt's Decl. at 5.) Again, Plaintiffs have submitted no declarations in support of this request. Defendants seek to reduce this rate to $100. (R. 117, Defs.' Mem. at 12.) With no evidence provided by Plaintiffs to justify this rate, the Court had to conduct its own analysis. *See Pickett*, 664 F.3d at 640. Opinions in this District discussing the reasonableness of law clerk hourly rates in FLSA cases are sparse. In fact, *Lizak* was the most recent case the Court could locate that discussed hourly rates for research clerks, a term which the Court presumes is akin to a law clerk. In *Lizak*, the Court awarded the clerk a $75 hourly rate. 2010 WL 3001906, at *4. As the Court has discussed above, hourly rate awards have increased since *Lizak* was issued, but that figure is a useful starting point. Outside the FLSA context, a 2012 opinion from the Northern District of Indiana found that $100 is the standard hourly rate awarded to law clerks and paralegals in both the Northern District of Illinois and the Northern District of Indiana. *Chorak v. Astrue*, Civ. No. 2:11-CV-114, 2012 WL 1577448, at *2 (N.D. Ind. May 4, 2012). The *Chorak* court also examined the 2005 Survey of Salaries and Benefits of the Illinois Paralegal Association, and found that law clerks located in Cook County with less than two years of experience have billing rates between $75 and $165 per hour. *Id.* at *3. In *Chorak*, the court ultimately awarded a law clerk with a law degree and 10 years of experience an hourly rate of $125, and a law clerk with no law degree an hourly rate of $100. *Id.* Based on this evidence, the Court will reduce Castro's hourly rate to $100.

### 6. Andre Smith's rate

Finally, Plaintiffs seek a rate of $100 per hour for paralegal Andre Smith. (R. 109,
Mot. Att'ys' Fees at 3; R. 109-3, Ex. C, Engelhardt's Decl. at 5.) Defendants do not object to
this rate, and the Court concludes that it is reasonable.

### B. Whether Plaintiffs' attorneys' hours were reasonably expended

The Court turns to the second figure in the lodestar calculation—the hours Plaintiffs'
attorneys "reasonably expended" litigating this case. *Hensley*, 461 U.S. at 434. The Supreme
Court has directed that "[c]ounsel for the prevailing party should make a good-faith effort to
exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as
a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."
*Id.* Accordingly, if the prevailing party fails to exercise the proper billing judgment, a court
should exclude from the fee calculation "hours that were not 'reasonably expended.'" *Id.*
(citation omitted).

Here, Defendants challenge several aspects of Plaintiffs' time entries, raising the
following issues: (1) whether Plaintiffs must reduce all hours incurred prior to Valerio, Garcia,
and Torres' acceptance of their Offers of Judgment by three-fourths; (2) whether Plaintiffs are
entitled to recover for time spent on behalf of Valerio, Garcia, and Torres for post-Offer of
Judgment collection efforts; (3) whether Plaintiffs may recover attorneys' fees for time spent
subpoenaing and reviewing payroll records from Parr Financial; (4) whether certain time
expended by Plaintiffs is excessive, redundant, or otherwise unnecessary; (5) whether certain
time entries are vague or insufficiently documented; (6) whether certain time expended by
Plaintiffs is administrative in nature, or otherwise unrecoverable; and (7) whether the time spent

preparing the fee petition is reasonable and recoverable. (R. 109-1, Ex. A, Local Rule 54.3 Joint

Statement; R. 117, Defs.' Mem.) The Court will consider each of Defendants' arguments in turn.

> **1.  Whether Plaintiffs must reduce all hours incurred prior to Valerio, Garcia, and Torres' acceptance of their Offers of Judgment by three-fourths**

Defendants first argue that because Valerio, Garcia, and Torres accepted Offers of

Judgment that included attorneys' fees, any fees incurred prior to the entry of the offers must be

reduced by three-fourths to prevent Valerio, Garcia, and Torres from recovering attorneys' fees

in excess of those awarded in their offers. (R. 117, Defs.' Mem. at 7.) Plaintiffs contend that

they have already reduced "shared tasks" that were carried out on behalf of all four Plaintiffs,

and that the remaining fees are not divisible on a plaintiff-by-plaintiff basis because they were

incurred in the course of "advancing the case as whole." (R. 110, Pls.' Mem. at 9.) Defendants

counter that there are numerous additional entries that can and should be reduced. (R. 117,

Defs.' Mem. at 8-9.)

The Supreme Court has warned fee applicants that "billing judgment is important in fee

setting . . . . Hours that are not properly billed to one's *client* are not properly billed to one's

*adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (internal quotation marks

and citation omitted). Defendants argue, citing *Hensely*, that Plaintiffs' attorneys could not

ethically bill each Plaintiff for the full amount of time required to complete a task on behalf of all

four Plaintiffs, otherwise the attorneys would receive a windfall by recouping four-times the

original cost incurred. (R. 117, Defs.' Mem. at 7-9.) Defendants argue that Plaintiffs must

reduce the fees incurred prior to the Offer of Judgments by three-fourths to ensure that only fees

incurred on Collazo's behalf are awarded. (*Id.* at 7.) The Court finds Defendants reasoning

persuasive, and that it would violate *Hensley* to permit Plaintiffs to recover fees from Defendants that Plaintiffs' attorneys could not properly recover from Plaintiffs.

In *Kurgan*, the court was tasked with determining how to apportion attorneys' fees in an suit involving four named plaintiffs in a class action under the FLSA, where only two of the Plaintiffs (Effort and Wallace) were eligible to recover fees. 2014 WL 7330758, at *1. The court concluded that "just as Effort and Wallace constitute 50% of the four named plaintiffs, so too should they be entitled to 50% of the fees required in representing the four named plaintiffs." *Id.* at *5; *see also Chapman v. Ourisman Chevrolet Co.*, Civil Action No. AW–08–2545, 2011 WL 2651867, at *17 (D. Md. July 1, 2011) (holding in a similar case that "given the success of two of fourteen plaintiffs, the Court awards the proportional amount of one-seventh of Plaintiffs' attorney's fees").

In this case, similar to *Kurgan*, the Court finds that it is appropriate to reduce Plaintiffs' pre-Offer of Judgment costs by three-fourths to ensure Plaintiffs do not receive a windfall. *See Hensley*, 461 U.S. at 444 (finding that if the prevailing party fails to exercise the proper billing judgment, a court should exclude from the fee calculation "hours that were not reasonably expended" (internal quotation marks and citation omitted)). The Court will not reduce *all* costs incurred prior to Valerio, Torres, and Garcia's acceptance of their Offers of Judgment on February 24, 2014, however, as some time entries are for tasks completed solely on Collazo's behalf. Instead the Court will reduce only those time entries that indicate tasks completed on behalf of multiple Plaintiffs.[3] As a result, the Court reduces Engelhardt's hours by 65.2 hours, Schumann's hours by 3.15, and Thoma's hours by 9.6 hours.

---

[3] Several entries pertain to multiple Plaintiffs, but not all four of them. In those instances, it would be inappropriate to reduce the time billed by three-fourths. Thus, the Court will reduce the entries at issue proportionally, e.g., if an entry pertains to Collazo and Garcia, the Court will

**2.     Whether Plaintiffs are entitled to recover for time spent on behalf of Valerio, Garcia, and Torres for post-Offer of Judgment collection efforts**

As discussed above, Valerio, Garcia, and Torres's Offers of Judgment each state that the awarded amount "represents the total amount that Defendants shall be obligated to pay to Plaintiff (including costs and attorneys' fees that Plaintiff may have incurred to the date of this offer)." (R. 63-1, Garcia's Offer of J. at 1; R. 64-1, Valerio's Offer of J. at 1; R. 65-1, Torres's Offer of J. at 1.) Defendants argue that Plaintiffs may not recover fees for time expended on behalf Valerio, Garcia, and Torres to collect the awarded fees in their Rule 68 Offers of Judgment because the offers unambiguously limit recovery of attorneys' fees to the fees awarded in each offer. (*Id.*) Plaintiffs interpret the offers as precluding the recovery of attorneys' fees incurred only up until the date the offers were accepted, and argue that they may recover fees for their post-judgment collection efforts. (R. 110, Pls.' Mem. at 10; R. 118, Pls.' Reply at 9.) Plaintiffs state that their attorneys expended 31.3 hours carrying out various tasks related to accepting the Offers of Judgment and post-judgment collection. (R. 118, Pls.' Reply at 8, n.6.) Defendants specifically object to time entries 238, 242, 244, and 255 pertaining to Engelhardt's work on the Citation Notices, which amount to 9.5 hours of her time. (R. 117, Defs.' Mem. at 6; R. 117-2, Defs.' Resp. Ex. B at 23-25.)

Rule 68(a) states in part: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). The purpose of a Rule 68 offer "is to encourage settlement and to discourage protracted litigation." *Sanchez v. Prudential Pizza, Inc.*,

---

reduce the entry by half. *See Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").

709 F.3d 689, 691 (7th Cir. 2013). "If the terms of a Rule 68 offer are not specific and clear, there are opportunities for both confusion and mischief." *Id.* The Seventh Circuit has observed that a Rule 68 offer of judgment can be analogized to contract law, *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 392-93 (7th Cir. 1999), but such an offer is different from a contract offer because of the consequences set out in Rule 68, *Sanchez*, 709 F.3d at 692. "[B]ecause the consequences of a Rule 68 offer are so great, the offering defendant bears the burden of any silence or ambiguity concerning attorney fees." *Id.* "Neither the Rule nor the Advisory Committee Notes elaborate on the meaning of 'costs then accrued' when an offer of judgment is accepted." *Grayer v. Cerda*, No. 12 C 2665, 2014 WL 6713480, at *6 (N.D. Ill. Oct. 6, 2014). Some courts have found the phrase "costs accrued to date" in Rule 68—a phrase materially similar to the phrase costs "incurred to the date of this offer" at issue here— ambiguous as to what point in the litigation attorneys' fees are no longer permissible. *See Morjal v. City of Chi., Ill.*, No. 12 CV 185, 2013 WL 2368062, at *2 (N.D. Ill. May 29, 2013) (phrase "costs accrued to date" in an offer of judgment was ambiguous and therefore construed against the offering defendant to permit award of fees incurred between offer of judgment and acceptance); *Stephens v. Cirrincione*, No. 11 C 6354, 2012 WL 2872448, at *3 (N.D. Ill. July 11, 2012) (same); *Lasswell v. City of Johnston City*, 436 F. Supp. 2d 974, 981 (S.D. Ill. 2006) (same). Other courts have found to the contrary. *See Cavada v. City of Chicago*, No. 13 CV 1916, 2014 WL 4124273, at *5 (N.D. Ill. Aug. 18, 2014); *Decker v. Transworld Sys., Inc.*, No. 09 C 50073, 2009 WL 2916819, at *2-3 (N.D. Ill. Sept. 1, 2009); *Arch v. Glendale Nissan*, No. 03 C 7297, 2005 WL 1421140, at *3 (N.D. Ill. June 7, 2005). This Court finds the phrase "including costs and attorneys' fees that Plaintiff may have incurred to the date of this offer" is not sufficiently clear to notify Plaintiffs that they could not collect any attorneys' fees incurred to

enforce the Offers of Judgment. Therefore, Defendants "should bear the burden of the ambiguity created by their silence[.]" *Webb v. James*, 147 F.3d 617, 623 (7th Cir. 1998).

In *Glendale Nissan*, the court confronted a similar set of facts to the one in this case, and "with some reluctance" elected to deny post-offer fees, in part because defendants did not employ a "scorched-earth approach" in resisting payment of the offer award. 2005 WL 1421140, at *3. Here, however, Plaintiffs assert that their attorneys made several oral and written requests to Defendants to secure payment of their awards, and Defendants do not dispute this argument. (R. 109-3, Ex. C, Engelhardt Decl. at 5-6; R. 110, Pls.' Mem. at 5.) Plaintiffs were forced to prepare Citation Notices to Defendants' financial institutions, which the Court issued on April 1 and April 21, 2014. (R. 79, Citation to Discover Assets; R. 93, Citation to Discover Assets.) The Court notes that Plaintiffs also had to prepare a Citation Notice on Collazo's behalf after Defendants failed to pay him promptly. (R. 93, Citation to Discover Assets; R. 109-3, Ex. C, Engelhardt Decl. at 5-6; R. 110, Pls.' Mem. at 5.) The record shows that Plaintiffs expended $3,840 on securing payment for Valerio, Garcia, and Torres. The Court finds Defendants dilatory behavior here akin to "scorched-earth" tactics the *Glendale Nissan* court contemplated.

The Seventh Circuit has permitted recovery of post-judgment collection fees outside the Rule 68 context. In *Balark v. Curtin* the court held that prevailing parties under 42 U.S.C. § 1988 are "ordinarily entitled to attorneys' fees incurred in litigating and establishing their entitlement to fees." 655 F.2d 798, 803 (7th Cir. 1981). It has also permitted prevailing parties in ERISA litigation to collect attorneys' fees for efforts to collect on a judgment. *See Free v. Briody*, 793 F.3d 807, 809 (7th Cir. 1986) ("It would make no more sense to deny attorney's fees for efforts to collect a judgment than it would to deny them for efforts to defend a judgment on appeal.") While the Court is aware of the pro-settlement purpose of Rule 68, *see Sanchez*, 709

F.3d at 691, under these facts, it would be unduly harsh to construe Defendants' ambiguous

Offers of Judgment to deny Plaintiffs' compensation for their post-judgment collection efforts.

The Court finds that construing the ambiguity of the offers against Defendants is particularly

appropriate here in light of the fact that Defendants failed to cooperate with Plaintiffs in their

efforts to secure payment without the Court's intervention.

Seeking to avoid this result, Defendants argue that Valerio, Torres, and Garcia's motion

for attorney's fees is untimely under Local Rule 54.3, and therefore they may not recover post-

judgment costs. (R. 117, Defs.' Mem. at 7-8.) Local Rule 54.3 provides a party 90 days after the

entry of judgment to file a fee motion. N.D. Ill. L.R. 54.3(b). The Court entered the Offers of

Judgment on March 12, 2014. (R. 69, Order; R. 70, Order, R. 71, Order.) On April 7, 2014,

Plaintiffs filed for an extension of time to file their fee petition, (R. 80, Pls. Mot. Extend), which

the Court granted on April 16, 2014, (R. 92, Min. Entry). Additional extensions were granted to

both parties, and the final deadline for Plaintiffs' motion was September 16, 2014. (R. 108, Min.

Entry.) Plaintiffs filed their motion on the deadline, (R. 109, Pls.' Mot. Att'y's Fees), and thus

the Court concludes that Plaintiffs' motion is not untimely under Local Rule 54.3.

Accordingly, the Court will not make Defendants' requested reductions to Engelhardt's

time focused on post-offer collection efforts.

### 3. Whether Plaintiffs may recover attorneys' fees for time spent subpoenaing and reviewing payroll records from Parr Financial

Defendants argue that Plaintiffs may not recover fees for time spent subpoenaing and

reviewing payroll records for a time period prior to Collazo's employment because the records

"bear no relationship to Mr. Collazo's claims[,]" and therefore it would be improper to bill

Defendants for these fees. (R. 117, Defs.' Mem. at 9.) Defendants do not cite to any

authoritative case law to support their argument, but they appear to rely on the principle

23

announced in *Hensley* that "hours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority." 461 U.S. at 434 (internal quotation marks and citation omitted).

Defendants incorrectly presume that because the payroll records pertain to a time period prior to Collazo's employment that they lack any probative value. Plaintiffs assert that the purpose of subpoenaing and reviewing the Parr Financial records was to discern Defendants' wage payment practices. (R. 118, Pls.' Reply at 10.) Plaintiffs also assert that the records were used at trial to establish the change in billing practices that occurred when Defendants purchased Dispatch Taxi; these records served as the basis for the Court's finding that Defendants willfully violated the FLSA, IMWA, and IWPCA. (*Id.*; see R. 77, Min. Entry.) Contrary to Defendants' position, the Court finds that Plaintiffs have demonstrated that the records were integral to Collazo's ability to make his case at trial. The fee applicant has "the burden of justifying the fees requested in the petition[,]" *Spellan*, 59 F.3d at 646, and the Court finds that Plaintiffs have met their burden. Therefore, under *Hensley*, the time spent subpoenaing and reviewing would be properly billed to Collazo, and thus the time is properly billed to Defendants. Accordingly, the Court will permit Plaintiffs to recover fees for time spent subpoenaing and reviewing the Parr Financial records.

### 4. Whether certain time expended by Plaintiffs is excessive, redundant, or otherwise unnecessary

Defendants next argue that Plaintiffs cannot recover for certain hours billed by Plaintiffs' attorneys that Defendants contend are "excessive and duplicative," many of which are instances in which two attorneys worked on the same task. (R. 117, Defs.' Mem. at 10-11.) Plaintiffs contend that they removed almost all of the time when two attorneys worked on the same task

24

prior to submitting their fee petition, and argue that the remaining time entries are reasonable.
(R. 110, Pls.' Mem. at 12.)

As stated above, the Supreme Court has directed that "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley,* 461 U.S. at 434. The Seventh Circuit has cautioned that "the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time[.]" *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989) (internal citations omitted); *see also Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) (noting that courts are "encouraged to scrutinize fee petitions for duplicative billings when multiple lawyers seek fees"). Nonetheless, this Court has held that the mere fact that "two lawyers have billed for the same task does not mean that the hours should be deducted." *Gibson v. City of Chi.*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012); *see also Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008) ("The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's [sic] trying to wade through the issue alone."). Thus, the relevant inquiry remains whether the time was "reasonably expended." *Hensley*, 461 U.S. at 444.

Defendants first object to Plaintiffs' billing for two attorneys attending the same status hearing. (R. 117, Defs.' Mem. at 11; R. 117-2, Defs.' Resp. Ex. B at 18-19.) Defendants point to time entry 205 logged by Engelhardt and entry 206 logged by Thoma. (R. 117-2, Defs.' Resp. Ex. B at 18-19.) These entries contain multiple tasks, and set forth the amount of time spent on each task. Engelhardt's description does not expressly include billing for attendance at a status

hearing. (*Id*. at 19.) As a result, the Court cannot determine which hours in the time entry that Defendants deem to be duplicative or excessive. The challenger to a fee petition "must detail his objections to the fee petition such that the court can determine what portion of the fees, if any, were not reasonably expended." *RK Co. v. See*, 622 F.3d 846, 854 (7th Cir. 2010). Defendant has not explained how the disputed time entry is duplicative or excessive, and thus the Court declines to subtract this cost from the fee petition.

Defendants also object to multiple attorneys billing differing amounts for the same tasks. (R. 117, Defs.' Mem. at 11.) Defendants again challenge entries 205 and 206 discussed above. (*See* R. 117-2, Defs.' Resp. Ex. B at 18-19.) Again, it is not immediately clear to the Court which task Defendants challenge, as no identical task is contained in entries 205 and 206. Because Defendants have the burden to sufficiently detail their objections, *see RK Co.*, 622 F.3d at 854, the Court will not subtract costs for the tasks billed in entries 205 and 206. Defendants also challenge Plaintiffs' attorneys billing different amounts for their participation in Collazo's trial on March 19, 2014. (R. 117-2, Defs.' Resp. Ex. B at 22.) Engelhardt billed six hours for this date, whereas Thoma billed seven hours. (*Id*.) Thoma's description of his tasks on that day demonstrate that he had more responsibilities on that particular date, and thus his charging of additional time seems eminently reasonable to the Court. It is not immediately clear to the Court why Defendants presume these hours were not "reasonably expended." The Court understands Defendants to be arguing that the mere fact the attorneys billed different hours for the same task makes the billing unreasonable *per se*. Defendants' conclusory objections will not suffice. Local Rule 54.3 requires "clarity and specificity in objections to fee petitions[,]" and does not "allow for the shifting to the court of the objector's responsibility to particularly delineate those fees with which it takes issue and to meaningfully explain why each item claimed to be

26

unreasonable or otherwise noncompensable should be disallowed." *Nilssen v. Gen. Elec. Co.*,

No. 06 C 04155, 2011 WL 633414, at *10 (N.D. Ill. Feb. 11, 2011); *see Sears, Roebuck & Co. v.*

*Menard, Inc.*, No. 01 C 9843, 2004 WL 2423964, *1 (N.D. Ill. Sept. 23, 2004) ("parties [must]

come to grips with specific objections to specific aspects of the movant's claim for fees, as

opposed to simply jousting in generalities"); *RK Co.*, 622 F.3d at 854 (finding that the district

court did not abuse its discretion in awarding fee applicant the full amount of fees request when

challenger failed to offer detailed objections). Accordingly, the Court will not subtract these fees

from Plaintiffs' fee petition.

Defendants also challenge the 14 hours that Plaintiffs' attorneys billed in preparing for

closing argument as excessive and duplicative. (R. 117, Defs.' Mem. at 11; R. 117-2, Defs.'

Resp. Ex. B at 22-23.) The Court does not deem two attorneys working on closing argument as

duplicative or unreasonable, particularly when one of the attorneys is a first-year associate who

likely required supervision. *See Gibson*, 873 F. Supp. 2d at 989. As for Defendants' argument

that spending 14 hours preparing for closing arguments is excessive, Defendants have not

provided any basis of comparison for the Court to conclude that 14 hours of preparation is

patently unreasonable. [4] *See O'Sullivan v. City of Chi.*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007)

(rejecting excessiveness challenges where the defendant "offered no objective standard, no

'reasonable' number of hours to spend on a given activity, with which to compare" to Plaintiff's

fee request); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) ("Lawyers do not

---

[4] Defendants reduce each time entry that it found excessive or redundant and propose an "adjusted amount" in their response to Plaintiffs' Exhibit B. (R. 117-2, Defs.' Resp. Ex. B.) The adjusted amounts appear to be arrived at arbitrarily, and Defendants have not explained how these calculations were performed or what objective standard was used to perform the calculations. Where, as here, defendants fail to provide a principled basis to reduce time entries that allegedly are excessive, the Court will not "engage in an arbitrary determination of how long a 'reasonable' attorney would spend" on certain tasks. *O'Sullivan*, 484 F. Supp. 2d at 837. Therefore, the Court will not adopt these adjusted amounts.

come from cookie cutters. Some are fast studies and others require extra preparation."). In addition, while Plaintiffs submitted a portion of Defendants' attorneys' billing statement, (R. 109-7, Defs.' Billing Statements), neither party submitted Defendants' billing statement for the period that included Collazo's trial. Thus, the Court has no basis for comparison in order to determine if the time Collazo's attorneys expended on the closing statement was indeed excessive. *See Delgado v. Mak*, No. 06 C 3757, 2009 WL 211862, at *7 (N.D. Ill. Jan. 29, 2009) ("[I]f Defendants had been able to demonstrate that they performed similar tasks with similar results in substantially less time, the Court may well have reduced or eliminated certain entries from the lodestar."); *Mohr v. Chi. Sch. Reform Bd. of Trs. of Bd. of Educ. of the City of Chi.*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002) ("If the winning counsel had taken less time, he might not be [in] a position to ask for attorneys' fees as the prevailing party's representative."). Therefore, the Court will not subtract these hours from Plaintiffs' fee petition.

Finally, Defendants claim that the remaining twenty objections to excessive or redundant time entries are "self-explanatory[.]" (R. 117, Defs.' Mem. at 11.) The Court does not view these objections as self-explanatory. In addition, as discussed above, these objections fail to comply with the requirements of Local Rule 54.3. *See Nilssen*, 2011 WL 633414, at *10; *Menard*, 2004 WL 2423964, at *1; *RK Co.*, 622 F.3d at 854. Consequently, the Court will not subtract these time entries from Plaintiffs' fee petition. *See Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 736 (7th Cir. 2010) (noting that district courts are "not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness").

### 5. Whether certain time entries are vague or insufficiently documented

Defendants next argue that many time entries are vague or insufficiently documented. (R. 117, Defs.' Mem. at 10.) "[W]hen a fee petition is vague or inadequately documented, a

district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000). The Seventh Circuit has held that "the amount of itemization and detail required is a question for the market[.]" *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Thus, "[i]f counsel submits bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *Id.* (citation omitted). This Court has previously held that "[t]he relevant inquiry is thus whether the time entries are sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation." *Gibson*, 873 F. Supp. 2d at 986 (internal quotation marks and citation omitted).

The Court has reviewed the disputed time entries, and most of them are sufficiently detailed to permit adequate review of the time billed. However, there are some exceptions that the Court will briefly explain. These exceptions involve the billing practice known as "block billing," where Plaintiffs have combined several discrete tasks in a single billing entry without specifying the amount of time spent on each task. While block billing "does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). In *Farafas*, the court held that defendants violated both "the letter and spirit" of Local Rule 54.3 by objecting to plaintiffs' attorneys' use of block billing and vague descriptions when defendants employed similarly vague descriptions and block billing. 433 F.3d at 569. The court found that "[t]he rule's purpose is to avoid exactly the type of hypocritical objections presented by the defendants." *Id.* Here, Defendants billing statement is replete with block billing. (R. 109-7, Defs.' Billing Statements.)

The Court notes that many of Defendants' attorneys' time entries provide the same level of detail as Plaintiffs' attorneys, and therefore, the Court will not strike these time entries. There are a few notable exceptions, such as time entry 10 that simply states "Call with A. Smith; email," that do not provide enough context for the Court to conclude that both Plaintiffs may recover for time expended on both tasks. (R. 117-2, Defs.' Ex. B Resp. at 1.) For instance, in entry 10, Plaintiffs do not disclose the subject matter pertaining to the call to "A. Smith," nor do they disclose whether time spent composing the email is compensable. *See Spegon,* 175 F.3d at 553 ("The district court should disallow time spent on what are essentially 'clerical' or secretarial tasks." (citation omitted)); *People Who Care,* 90 F.3d at 1315 (finding it reasonable to require attorneys to delegate work to the "correct level" of employee). Due to the vagueness of the entry, and the Court's inability to decipher what work was performed, it will not be allowed. *See Johnson,* 2014 WL 463676, at *5.

Additionally, the Court found entries 185, 209, and 240 inadequate for the same reason.[5] The Court notes, however, that in many instances Plaintiffs attorneys' have voluntarily reduced the billing amount from the original amount of time Plaintiffs attorneys actually billed. Accordingly, in its discretion, the Court finds it appropriate not to strike the entire entry, but rather reduce the impermissible portion of the entry by 50 percent. *See Gibson,* 873 F. Supp. 2d at 987 (reducing hours by 50% where entries were vague). This results in a 2-hour reduction of Engelhardt's time and a 1-hour reduction for Thoma.

---

[5] The Court notes that there is some overlap between entries Defendants argue are insufficiently documented and those that bill for administrative tasks. The entries for administrative tasks that the Court struck due to insufficient documentation will not be addressed in Section 6, which analyzes whether Plaintiffs may recover for administrative or other non-compensable tasks.

**6.    Whether certain time expended by Plaintiffs is administrative in nature, or otherwise unrecoverable**

Defendants contend that several time entries contain administrative tasks for which

Plaintiffs may not recover. (R. 117, Defs.' Mem. at 11.) As discussed above, courts should not

permit recovery for administrative or clerical tasks, such as organizing file folders, preparing

documents, and copying documents. *Spegon*, 175 F.3d at 553. The time entries Defendants

object to include preparing a retainer agreement (entry 2), preparing exhibits for trial (entry 214),

creating a list of expenses (entry 239), and entering time entries into an Excel spreadsheet (entry

308). (*Id.* at 11.) Plaintiffs do not challenge Defendants' classification of these tasks as

administrative and do not actually address this argument in their briefs. The Court agrees with

Defendants that these tasks are administrative in nature, and thus are not compensable.

Accordingly, the Court will subtract these entries from Plaintiffs' fee petition. As a result, the

Court reduces Engelhardt's time by 1.8 hours, and Thoma's hours by 1.9 hours.

Next, Defendants argue that certain time entries are not compensable because they

involve research of the Federal Rules of Evidence and Federal Rules of Civil Procedure, as well

local rules on various topics. (R. 117, Defs.' Mem. at 11-12.) Defendants cite to *Dormeyer v.*

*Comerica Bank-Illinois*, No. 96 C 4805, 1999 WL 608771, at *4 (N.D. Ill. Aug. 6, 1999), where

the court held that attorney time spent familiarizing oneself with the Federal Rules of Evidence

are not recoverable. However, the Seventh Circuit has held to the contrary, finding that "[n]o

matter how experienced a lawyer is, he has to conduct (or have conducted for him) research to

deal with changes in the law, to address new issues, and to refresh his recollection." *Matter of*

*Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992); *see also Morjal*, 2013 WL 2368062, at

*2 (finding that time spent ensuring compliance with local rules is compensable). The Seventh

31

Circuit in *Securities Litigation* added that "a lawyer who tries to respond to a motion or brief without conducting fresh research is courting sanctions or a malpractice suit." 962 F.2d at 570.

In a similar vein, Defendants object to Plaintiffs' inclusion of various tasks, such as "review FRCP 62" (entry 206), "research local rules deposition rates for transcripts, appearance fees" (entry 240), and "Research rule 45" (entry 191). (R. 117, Defs.' Mem. at 11-12; *see* R. 117-2, Defs.' Ex. B Resp.) The Court finds that these entries plainly constitute permissible legal research, and therefore declines to subtract these entries from Plaintiffs' fee petition.

<strong>7.    Whether the time spent preparing the fee petition is reasonable and recoverable</strong>

Finally, Defendants argue that the amount of time expended by Plaintiffs' attorneys in preparing the petition for fees and costs is unreasonable. (R. 117, Defs.' Mem. at 14-15.) While time expended in preparation of a fee petition is compensable, the Seventh Circuit has observed that lawyers often "litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988). Accordingly, one factor considered in determining the reasonableness of time spent preparing a fee petition is "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon*, 175 F.3d at 554. Where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition. *Id.* In *Ustrak*, for example, the prevailing party's attorney spent 15 minutes preparing the fee petition for every hour spent litigating the merits. 851 F.2d at 988. The Seventh Circuit referred to this as "the tail wagging the dog, with a vengeance[,]" and reduced the requested time by two-thirds. *Id.*; *see also Uphoff*, 176 F.3d at 411 (affirming district court's reduction of attorney's time spent preparing the attorneys' fee motion from 9.9 hours to 1.6 hours where the attorney spent just under 100 hours litigating the merits of the case).

Here, according to Plaintiffs' attorneys' billing records, counsel spent 56.2 hours in preparing the petitions for fees, after accounting for hours the court has already determined were not reasonably expended. (R. 109-2, Ex. B, Pls.' Billing Statement.) After reducing the time not reasonably expended by Plaintiffs' attorneys detailed above, counsel spent 356.03 hours litigating the merits of this case, meaning that they spent eleven minutes preparing the motions for costs and fees for every hour on the merits. The Court concludes that this amount is excessive. *See Ustrak*, 851 F.2d at 988. In *Gibson*, this Court reduced the hours expended on the fee petition by 20% where the prevailing party spent ten minutes preparing the motions for costs and fees for every hour on the merits. 873 F. Supp. 2d at 992. Given the similar proportion of time at issue here, the Court again finds a 20% reduction in each attorneys' time spent preparing the fee petition is appropriate. Accordingly, the Court reduces Engelhardt's hours by 6.5 hours, Thoma's hours 5.8 hours, and Schumann's hours by .1 hours.

After considering Plaintiffs' requested fees and Defendants' objections, the lodestar in this case stands at $107,640 based on the following breakdown of reasonable hourly rates and hours expended:

| Attorney | Rate | Requested Hours | Reductions | Total Hours Awarded | Total Per Attorney |
|---|---|---|---|---|---|
| Engelhardt | $400 | 275.5 | 75.5 | 200 | $80,000 |
| Thoma | $195 | 150.8 | 18.3 | 132.5 | $25,837.50 |
| Schumann | $250 | 8.5 | 3.3 | 5.2 | $1,300 |
| McGaughy | $250 | 0.75 | 0 | 0.75 | $187.50 |
| Castro | $100 | 1.6 | 0 | 1.6 | $160 |
| Smith | $100 | 1.55 | 0 | 1.55 | $155 |

| | TOTAL | 438.7 | 97.1 | 341.6 | $107,640 |
|---|---|---|---|---|---|

## III.  Adjustment of the lodestar under *Hensley*

After calculating the lodestar, the Court may, at its discretion, increase or reduce the

modified lodestar amount by considering a variety of factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3.

Defendants argue, citing *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674,

686 (N.D. Ill. 2012), that the Court should also consider further reductions when a request for

fees is a large multiple of the amount awarded.  (R. 117, Defs.' Mem. at 3 n.2.)  Plaintiffs' fee

request is nearly five times the collective amount awarded to Plaintiffs.

Proportionality is the comparison between a plaintiff's damages and attorneys' fees.

*Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009).  There is no

strict rule of proportionality, and the Seventh Circuit has "repeatedly rejected the notion that the

fees must be calculated proportionally to damages." *Estate of Enoch ex rel. Enoch v. Tienor*, 570

F.3d 821, 823 (7th Cir. 2009) (internal quotation marks and citation omitted).  However,

proportionality is *a* relevant factor; any fee award "should evidence increased reflection before

awarding attorney's fees that are large multiples of the damages recovered or multiples of the

damages claimed." *Moriarty v. Svec*, 233 F.3d 955, 967-68 (7th Cir. 2000); *see also Schlacher*

*v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009) (same).

Defendants bear the burden of showing that a reduction in the lodestar calculation is appropriate. *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007).

Here, Defendants argue that the lodestar is excessive in light of the limited motion practice in this case, the narrow scope of discovery, and the prolonged settlement discussions due to Plaintiffs' exorbitant settlement demands. (R. 117, Defs.' Mem. at 2-3.) The Court agrees with Defendants. In addition, in evaluating the *Hensley* factors, the Court recognizes that the case was not particularly complex, and there were no dispositive motions or novel legal issues addressed by the parties. *See Anderson*, 578 F.3d at 545 ("Simple cases should require fewer hours than complex cases.") All these factors persuade the Court that a reduction of the lodestar is necessary, as the current lodestar figure is in excess of a reasonable attorney's fee award in light of the relevant recoveries in this case. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("A reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)) (internal alterations omitted)). While the Court recognizes Defendants behavior has been dilatory in certain respects, it has already permitted Plaintiffs to recover costs in those instances.

Defendants seek to reduce Plaintiffs' proposed lodestar by 65%, for a total attorneys' fee award of $54,660.24. (R. 117, Defs. Mem. at 2.) Defendants cite to no case law to justify such a significant reduction. The Court finds this proposed reduction excessive; it is expected that, to a certain extent, the fee award will exceed damages. *See Anderson*, 578 F.3d at 545 ("Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." (citation omitted)). In its survey of recent opinions in

35

this District, the Court has found that courts have reduced fee awards when the award is between four-to-eight times the recovery. *See Ingram*, 2013 WL 6664782, at *7 (noting cases in which courts have reduced fee awards that are four-to-eight times the damages awarded); *see also Ragland v. Ortiz*, No. 08 C 6157, 2012 WL 4060310, at *6 (N.D. Ill. Sept. 14, 2012) (reducing the fee award by 15% when the award was four times the damages awarded); *Swanigan v. Trotter*, No. 07 C 4749, 2012 WL 4060308, at *3-4 (N.D. Ill. Sept. 14, 2012) (reducing the fee award by 35% when the award was eight times the damages awarded). Here, in light of the fact that Plaintiffs' proposed fee award is nearly five times the damages awarded, as well as the other *Hensley* factors analyzed, the Court finds that a reduction of 20% from the newly calculated lodestar is appropriate.

Seeking to avoid this result, Plaintiffs argue that under *Farrar v. Hobby* the Court may only reduce fee awards based on a proportionality argument when the damages awarded are nominal, which the awards in this case are not. (R. 110, Pls.' Mem. at 7 n.5 (citing 506 U.S. 103 (1992).) *Farrar* raises a rebuttable presumption that attorney's fees are inappropriate when a plaintiff recovers only nominal damages. *Maul v. Constan*, 23 F.3d 143, 148 (7th Cir. 1994). However, Plaintiffs have confused the type of proportionality at issue here. In *Anderson*, the Seventh Circuit set forth two types of proportionality: (1) where the prevailing party recovers a very small percentage of the damages claimed and the attorney's fees are consequently reduced; and (2) where the prevailing party seeks attorney's fees that overshadow the damages awarded. 578 F.3d at 544-45. *Farrar* contemplates only the first type of proportionality, *see id.* at 545, whereas this case contemplates the second type. The *Anderson* court held that a "comparatively large fee request raises a red flag[,]" and reiterated that courts should give "increased reflection before awarding attorney's fees that are several times the amount of the actual damages." *Id.* at

546. The Court has followed this mandate, and accordingly, in its discretion, has reduced the lodestar by 20% to $86,112.

## IV. Bill of Costs

Pursuant to Rule 54(d), "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). A district court may not tax costs under Rule 54(d), however, "unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-43 (1987)). The list of recoverable costs authorized under 28 U.S.C. § 1920 include:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees . . . ; [and]

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services . . .

28 U.S.C. § 1920 (1)-(6).

Even if authorized by statute, however, "a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). In short, the determination of whether to tax costs against the losing party requires two inquiries: "(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chi.*, 218 F.3d 816, 824 (7th Cir. 2000). "There is a presumption that the prevailing party

will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The prevailing party then carries the burden of showing that the requested costs were "necessarily incurred and reasonable." *Trs. of the Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). Ultimately, the decision of whether to award costs is within the Court's discretion. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991).

Plaintiffs request $3,452.36 in costs, which includes $350 in filing fees, $245.36 in service fees, $2,021 in deposition and court reporter fees, $235 in witness fees, and $601 for copies. (R. 109-9, Pls.' Bill of Costs.) Defendants argue that the filing, service, deposition, and court reporter costs are unreasonable and should be divided by one-fourth to account for Valerio, Torres, and Garcia's accepted Offers of Judgment that included costs incurred up to the date the offer was accepted. (R. 117, Defs.' Mem. at 15.) Plaintiffs argue that such a mechanical approach to reducing the costs is inappropriate because it has no bearing on the actual expenses attributable to Collazo. (R. 110, Pls.' Mem. at 15.) The Court finds Plaintiffs argument unpersuasive.

As discussed above, Valerio, Torres, and Garcia's Offers of Judgment clearly and unambiguously included all costs incurred up to the date of the offer. *See Fisher v. Kelly*, 105 F.3d 350, 352 (7th Cir. 1997) ("When the term 'costs' is used in an offer of judgment, it is read to include all costs awardable under the relevant substantive statute") (quoting *Marek v. Chesny*, 473 U.S. 1, 7-9 (1985)); *Uphoff*, 176 F.3d at 410 (establishing that the term "costs" in the FLSA's fee-shifting provision 29 U.S.C. § 216(b) are the same "costs" defined in 28 U.S.C. § 1920). Plaintiffs do not allege that any costs were incurred on behalf of Valerio, Torres, and

Garcia after the acceptance of their offers. The Court finds that it would violate Rule 68 to

permit recovery of additional costs incurred prior to Plaintiffs' acceptance of their Offers of

Judgment. *See Nordby*, 199 F.3d 390, 392 (7th Cir. 1999) (strictly enforcing the terms of an

unambiguous offer of judgment). Plaintiffs have failed to persuade the Court that it would be

reasonable to permit them to recover costs that were already provided to them through their

Offers of Judgment. *See Cork Plastering Co.*, 570 F.3d at 906. Therefore, consistent with its

approach to reducing pre-Offer of Judgment attorneys' fees, the Court will reduce certain costs

incurred up until the Offers of Judgment.

Defendants acknowledge there are certain costs that are attributable solely to Collazo,

including the witness fees for trial witnesses, as well as the fees for Collazo's deposition, and do

not challenge Collazo's full recovery for those costs. (R. 117, Defs.' Mem. at 16.) Defendants

have submitted proposed adjustments to Plaintiffs' Bill of Costs to reflect the appropriate

reductions.[6] (R. 117-3, Defs.' Resp. Ex. C.) The Court has thoroughly reviewed Defendants'

itemized reductions, and finds that Defendants have accurately adjusted Plaintiffs' costs request.

Accordingly, the Court reduces Plaintiffs' costs to $1,387.78, as detailed in Defendants' Exhibit

C.

---

[6] Defendants also challenge Plaintiffs' inclusion of costs related to reproducing exhibits for trial, arguing that copies made solely for attorney convenience are not recoverable. *See McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 2010). Plaintiffs did not address Defendants' objection to this specific cost. Once a non-movant has raised an objection, the prevailing party bears the burden of justifying an expense. *Cork Plastering Co.*, 570 F.3d at 906. Plaintiffs failed to meet this burden, and therefore, the Court will permit the deduction of this cost as reflected in Defendants' itemized objections to Plaintiffs' Bill of Costs. (R. 117-3, Defs.' Resp. Ex. C.)

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees and costs (R. 109) is GRANTED in part and DENIED in part. The Court, in its discretion, awards Plaintiffs $86,112 in attorneys' fees and $1,387.78 in costs.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: March 3, 2015**