

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE VALERIO, ANIBAL TORRES, JR., JOHNATHAN COLLAZO, and ULISES GARCIA<br><br>Plaintiffs,<br><br>v.<br><br>TOTAL TAXI REPAIR & BODY SHOP, LLC, DISPATCH TAXI MANAGEMENT LLC, DISPATCH TAXI AFFILIATION, INC., GFST, INC., SAVAS TSITIRIDIS, and EVGENY FREIDMAN, individually<br><br>Defendants. | No. 12 C 9985<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

On March 3, 2015, this Court granted in part Plaintiffs Ulises Garcia, Jose Valerio, Anibal Torres, Jr., and Johnathan Collazo's (collectively, "Plaintiffs") motion for attorneys' fees and costs in the amount of $86,112 in attorneys' fees and $1,387.78 in costs. (R. 121, Mem. Op. & Order.) Presently before the Court is Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 25(c) to substitute parties. (R. 122, Pls.' Mot.) Also before the Court is Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 60(a) to correct this Court's March 3, 2015 Order implementing the judgment. (*Id.*; *see* R. 120, Order.) For the reasons set forth below, Plaintiffs' motion to substitute parties is denied, and their motion to correct is granted.

## BACKGROUND

The Court assumes familiarity with the facts of this case as outlined in its March 3, 2015 Memorandum Opinion and Order. *See Valerio v. Total Taxi Repair & Body Shop, L.L.C.*, No. 12 C 9985, 2015 WL 1059362 (N.D. Ill. 2015). The facts are repeated here only as they pertain to

the instant motions. On December 14, 2012, Plaintiffs filed suit against Defendants Total Taxi Repair & Body Shop, LLC, Dispatch Taxi Affiliation, Inc. ("Dispatch Inc."), Dispatch Taxi Management, LLC, GFST, Inc., Savas Tsitiridis, and Evgeny Freidman (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215 *et. seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/2 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* (R. 1, Compl.) On March 10, 2014, Garcia, Valerio, and Torres accepted Offers of Judgment pursuant to Federal Rule of Civil Procedure 68. (*See* R. 63, Garcia's Acceptance of Defs.' Offer of J.; R. 64, Valerio's Acceptance of Defs.' Offer of J.; R. 65, Torres's Acceptance of Defs.' Offer of J.) On March 25, 2014, following a three-day bench trial, the Court returned a verdict in favor of Collazo as to his claims under the FLSA, IMWL, and IWPCA. (R. 77, Min. Entry.)

Plaintiffs jointly filed a motion for attorneys' fees and costs, (R. 109, Mot. Atty'ys' Fees at 1), and supporting memorandum, (R. 110, Pls.' Mem.), on September 16, 2014. Plaintiffs sought attorneys' fees and costs in the amount of $157,495.00, and $3,452.36 respectively. (*Id.*) The Court awarded $86,112 in attorneys' fees and $1,387.78 in costs. (R. 121, Mem. Op. & Order.) On March 20, 2015, Plaintiffs submitted a demand letter to Defendants through their counsel seeking payment of the Court's award. (R. 122-2, Ex. 2, Demand Letter at 2.) In the letter, Plaintiffs requested a response from Defendants by March 25, 2015; Plaintiffs contend that they never received a response. (R. 122, Pls.' Mot. at 2.) On March 27, 2015, Plaintiffs filed a motion to substitute corporate entities as Defendants under Rule 25(c). (*Id.*) Plaintiffs also seek to correct and "clarify" the Court's March 3, 2015 Order. (*Id.; see* R. 120, Order.)

## DISCUSSION

### I.     Rule 25(c) Motion

#### A.     Legal Standard

Rule 25(c) states that: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). The rule "does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C Federal Practice & Procedure § 1958 (3d ed. 2010); *see also Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985) (citation omitted).[1] Rule 25(c) provides the procedural mechanism for substitution, but relies on other substantive law to determine whether an "interest" has been transferred. *Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 357 (7th Cir. 2014). The nature of Rule 25(c) "vests a great deal of discretion in the hands of the court. It is not mandatory that a substitution be made in every case of a transfer of interest." *Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 16 (7th Cir. 1977) (citation omitted); *see also Sullivan*, 739 F.3d at 357.

---

[1] The Court notes that this motion was filed at least a year and a half after the new entities were formed. (*See* R. 125, Defs.' Resp. at 2; R. 127, Pls.' Reply at 3-4.) However, the Seventh Circuit and courts in this District have routinely permitted litigants to file motions under Rule 25(c) after judgment has been entered. *See, e.g., Sullivan*, 739 F.3d 354, *Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109 (7th Cir. 1991), *Trs. of Chi. Reg'l Council of Carpenters Pension Fund v. Conforti Constr. Co.*, No. 09 C 322, 2013 WL 3771415 (N.D. Ill. July 17, 2013). In accordance with this practice, the Court will consider Plaintiffs' motion despite the delay in its filing.

**B.      Analysis**

Plaintiffs request that the Court substitute Dispatch Taxi Affiliation, LLC ("Dispatch

LLC"), for Defendant Dispatch Inc. (R. 122, Pls.' Mot. at 3.) Plaintiffs also seek to add

Dispatch Brokerage Services, LLC ("Dispatch Brokerage"), and Windy City Meter Shop, LLC

("Windy City"), as Defendants. (*Id.*) The Court will address each argument in turn.

Plaintiffs' first request that the Court substitute Dispatch LLC for Dispatch Inc., arguing

that Dispatch LLC has replaced the now-inactive Dispatch Inc. (*Id.*) Defendants counter that

Dispatch LLC is not a successor-in-interest to Dispatch Inc. or any other Defendant. (R. 125,

Defs.' Resp. at 2.) Defendants also argue that Dispatch Inc. was voluntarily dissolved and

Dispatch LLC was formed at least a year and a half before this Court's entry of judgment, and

therefore Dispatch LLC could not have been formed in an effort to evade this Court's order to

pay fees and costs. (*Id.*)

Plaintiffs do not specify what source of substantive law they rely on in alleging that an

"interest" has been transferred. However, Plaintiffs argue that the new entities are successors to

Defendants other businesses, and thus the Court will analyze whether Plaintiffs can demonstrate

that an "interest" was transferred under the successor liability doctrine. *See Teed v. Thomas &*

*Betts Power Solutions, L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013) (employing the successor

liability doctrine to determine if substitution of defendants in an FLSA case was proper);

*Deschepper v. Midwest Wine & Spirits, Inc.*, No. 13 CV 8379, 2015 WL 1433230, at *8-*9

(N.D. Ill. Mar. 26, 2015) (same); *Ordonez v. Akorat Metal Fabricators, Inc.*, No. 10 C 5708,

2011 WL 6379290, at *1-*3 (N.D. Ill. Dec. 20, 2011) (same). When a claim involves violation

of a federal right relating to labor relations or employment, such as the FLSA, the federal

common law of successor liability governs. *Teed*, 711 F.3d at 764. Under the general common

law rule, "a corporation purchasing the assets of another corporation does not assume the obligations of the transferor." *Sullivan*, 739 F.3d at 357. However, the federal common law doctrine of successor liability relaxes this standard in FLSA cases in order to vindicate the important statutory goal of "protect[ing] workers' standards of living through the regulation of working conditions." *Teed*, 711 F.3d at 766 (quoting *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995)); *see also* 29 U.S.C. § 202. As the Seventh Circuit observed, "in the absence of successor liability, a violator of the [FLSA] could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer . . . and then dissolving." *Id.* Courts consider the following factors in assessing whether successor liability is warranted: (1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor would have been able to provide the relief requested prior to the sale; (3) "whether the predecessor could have provided relief after the sale[;]" (4) "whether the successor can provide the relief sought in the suit[;]" and (5) whether there has been a sufficient continuity in the business operations of the predecessor and successor. *Id.* at 765-66. Consequently, the *Teed* court clearly premised its application of the successor liability doctrine on some type of purchase or sale of assets between the predecessor and successor having taken place. *See id.*

Here, Plaintiffs hinge their argument for successor liability upon documentation they submitted to the Court demonstrating that both entities operate from the same location, and both entities are managed and owned by Defendants Tsitiridis and Freidman. (R. 122-2, Ex. 4B, Dispatch LLC Docs. at 11-12). Plaintiffs have also submitted documentation demonstrating that Dispatch LLC provides taxicab services. (*Id.* at 13-20.) However, Plaintiffs have not submitted any direct evidence, nor do they actually allege, that any transfer of interest took place.

Therefore, Plaintiffs are precluded under *Teed* from asserting successor liability. *See* 711 F.3d at 765-66. Indeed, the *Teed* court explained that the main purpose animating the successor liability doctrine was to hold accountable employers who sought to evade judgment by selling their assets. *See id.* at 766. The Court recognizes that Plaintiffs' evidence indicates that the notice and continuity factors from *Teed* are likely present here. Plaintiffs have demonstrated that Dispatch LLC had notice of their claim through its managers Tsitiridis and Freidman, and that there was at least some degree of continuity between Dispatch LLC and Dispatch Inc. *See id.* at 765-66. Plaintiffs' evidence does not address the financial status of either entity, so the Court cannot analyze the second, third, or fourth *Teed* factors. *See id.* Nonetheless, Plaintiffs have failed to meet the threshold determination establishing an asset or purchase, so Plaintiffs necessarily have not established that imposing successor liability is appropriate here.

As a final matter, the Court notes that there is Seventh Circuit precedent permitting the substitution of a successor-defendant without a formal purchase of assets. In *Panther Pumps*, the court permitted substitution of a newly formed corporation as a defendant in a lawsuit after determining that the corporation was a continuation or "alter ego" of a dissolved corporation. 566 F.2d at 25. The evidence demonstrated that both corporations had the same owner, and that the owner transferred inventory from the original corporation to the new one in order to make a substantially identical product. *Id.* In essence, the court found that substitution of the successor entity was warranted because the owner had transferred the entire business of the original

corporate defendant to the successor.[2] *Id.* In the instant case, both entities are owned by Tsitiridis and Freidman; however, it is entirely speculative as to whether any assets, inventory, or interest have been transferred from Dispatch Inc. to Dispatch LLC. Without evidence from Plaintiffs demonstrating that Dispatch LLC was the recipient of an "interest" from Dispatch Inc., the Court cannot find substitution of Dispatch LLC proper under Rule 25(c). Accordingly, the Court declines to substitute Dispatch LLC as a defendant in this suit.

Plaintiffs also seek to add Dispatch Brokerage and Windy City as Defendants, arguing that both entities are successors to Tsitiridis' and Freidman's other taxicab businesses. (R. 122, Pls.' Mot. at 3.) Defendants re-iterate their argument above that these entities are not successors in interest because they were formed years before the Court issued its Order. (R. 125, Defs.' Resp. at 2.)

As described above, before a court may impose successor liability it must consider various factors as noted in Teed. *See* 711 F.3d at 765-66. However, a threshold determination as to whether it is appropriate to impose successor liability is whether or not some type of purchase, sale or other transfer of assets occurred between the predecessor and successor. *See id.*

Here, Plaintiffs' evidence demonstrates that Dispatch Brokerage operates as a taxicab company that is "affiliated" with Dispatch LLC, and that Tsitiridis and Freidman are the only individuals holding any ownership interest in Dispatch Brokerage. (R. 122-2, Ex. 4A, Dispatch Brokerage Docs. at 5-10.) The evidence also demonstrates that Dispatch Brokerage operates from the same address as the other Tsitiridis-and Freidman-owned entities. (*Id.*) In addition,

---

[2] The *Panther Pumps* court also found that substitution of the newly formed corporation was appropriate because the transfer of assets between the two entities was done fraudulently to escape liability. 566 F.2d at 25-26. Although Plaintiffs imply that Defendants' new entities are merely efforts by Defendants to escape liability, Plaintiffs do not assert that any transfer of assets or other interest occurred here, and therefore, this exception to the general common law rule regarding successor liability is equally inapplicable as the "alter ego" exception discussed above.

Plaintiffs also provided annual reports submitted to the Illinois Secretary of State by both

Dispatch Brokerage and Windy City that list Tsitiridis and Freidman as the sole LLC members.

(R. 122-2, Ex. 4A, Dispatch Brokerage Docs. at 3-4; R. 122-2, Ex. 4C, Windy City Docs. at 21-

22.) Further, Plaintiffs' counsel, Karen Engelhardt, submitted an affidavit in which she attests

that while working on another FLSA matter pending in this District involving Tsitiridis and

Freidman as defendants, she learned that the plaintiffs in her new case received payroll checks

from Dispatch Brokerage and Windy City. (R. 122-2, Ex. 4, Engelhardt Aff. at 1-2; *see Bergner*

*v. Windy City Meter Shop, L.L.C., et al.*, No. 14 C 8113 (N.D. Ill. filed Oct. 16, 2014)). Similar

to the Court's analysis above, Plaintiffs evidence fails to establish that any purchase or transfer

of interest took place between Defendants and Windy City Meter or Dispatch Brokerage. While

the Court agrees that Plaintiffs' evidence tends to establish the notice and continuity factors are

present here, Plaintiffs simply fail to allege any transfer of interest that would trigger the

operation of Rule 25(c). Mere speculation without any evidence is simply not enough to satisfy

Rule 25(c). Further, this is not a case that is similar to *Panther Pumps*, in which the owner

transferred his entire business and all its assets, *see* 566 F.2d at 25; rather, the thrust of Plaintiffs

allegations is that Tsitiridis and Freidman maintain many businesses simultaneously, (*see, e.g.*,

R. 127, Pls.' Reply at 2). Therefore, neither the "alter ego"/continuation or fraudulent transfer

exceptions discussed in *Panther Pumps* applies here. *See Panther Pumps*, 566 F.2d at 25-26.

Consequently, the Court must reluctantly deny Plaintiffs' request to add Dispatch Brokerage and

Windy City as Defendants even though it appears that Tsitiridis and Freidman may be operating

in an unethical manner to defeat this Court's hard fought judgment in this case.[3]

Thus, the Court must decline to grant Plaintiffs' Rule 25(c) motion.[4]

## II.     Rule 60(a) Motion

### A.     Legal Standard

Rule 60(a) authorizes the district court to "correct a clerical mistake or a mistake arising

from oversight or omission whenever one is found in a judgment, order, or other part of the

record." Fed. R. Civ. P. 60(a); *see also Shuffle Tech Int'l, L.L.C. v. Wolff Gaming, Inc.*, 757 F.3d

708, 709 (7th Cir. 2014) (same). "[I]f the flaw lies in the translation of the original meaning to

the judgment, then Rule 60(a) allows a correction; [but] if the judgment captures the original

meaning but is infected by error, then the parties must seek another source of authority to correct

the mistake." *Shuffle Tech Int'l*, 757 F.3d at 710 (citation omitted). In other words, "[t]he past

cannot be rewritten; Rule 60(a) allows a court to correct records to show what *was* done, rather

than change them to reflect what *should have been* done." *Blue Cross & Blue Shield Ass'n v.*

*Am. Express Co.*, 467 F.3d 634, 637 (7th Cir. 2006).

### B.     Analysis

The Court's March 3, 2015 Order states in pertinent part, "Plaintiffs' motion for

attorneys' fees and costs [109] is granted in part and denied in part. Plaintiffs are awarded

---

[3] Defendants also argue that Plaintiffs failed to properly serve them as required by Rule 25(a)(3) and Federal Rule of Civil Procedure 4. (R. 125, Defs.' Resp. at 4.) Plaintiffs attempted to cure this deficiency upon being made aware of their error. (R. 127, Pls.' Reply at 5; R. 127-1, Ex. A, Service Docs.) However, having already determined that substitution is not proper in this case, the Court will not engage in an analysis as to the sufficiency of service.

[4] However, the Court wishes to make clear that the "[d]enial of a Rule 25(c) motion does not preclude the substitution of parties in actions to enforce the judgment." *Otis Clapp*, 754 F.2d at 743 (citing *Panther Pumps*, 566 F.2d at 22-28). Although the Court, in its discretion, denies Plaintiffs' motion, Plaintiffs may seek to substitute these new entities during enforcement proceedings should the need arise.

attorneys' fees in the amount of $86,112, and costs in the amount of $1,387.78." (R. 120, Order.) Plaintiffs request that the Court amend its' Order to identify the exact Defendants against whom the judgment is entered, and to provide that Plaintiffs' counsel—Allison, Slutsky & Kennedy, P.C.—and not Plaintiffs themselves, were awarded attorneys' fees and costs. (R. 122, Pls.' Mot. at 3.) The Court will address each of Plaintiffs' requests in turn.

Plaintiffs first request this Court to identify Defendants in its Order, arguing that this clarification is necessary in order for them to effectively undertake collection efforts. (R. 127, Pls.' Reply at 9.) Defendants do not directly object to this change, but more generally argue that any amendment to the Order would be "premature" because Plaintiffs have not commenced enforcement efforts. (R. 125, Defs.' Resp. at 4.)

Plaintiffs' requested amendment is clearly within the "original meaning" of the Court's Order. *See Shuffle Tech Int'l.*, 757 F.3d at 710 (citation omitted). Further, Defendants do not directly object to the Court making this alteration. To the extent that there was any ambiguity in the Court's Order, it will amend the Order to clarify that the award of attorneys' fees and costs is entered against Defendants Total Taxi Repair & Body Shop, LLC, Dispatch Taxi Management, LLC, Dispatch Taxi Affiliation, Inc., GFST, Inc., Savas Tsitiridis, and Evgeny Freidman.

Plaintiffs also request that the Court amend its Order to reflect that attorneys' fees and costs are awarded to Plaintiffs' counsel, arguing that the retainer agreement between Plaintiffs and their counsel provides that any award of fees and costs belongs solely to counsel. (R. 122, Pls. Mot. at 2-3; *see* R. 122-1, Ex. 3, Collazo's Retainer Agreement at 3-7.) Defendants argue that making this alteration is inappropriate because the Court is not subject to any provision of the retainer agreement. (R. 125, Defs.' Resp. at 3-4.)

As an initial matter, the Court notes that it is customary to award attorneys' fees to the prevailing party, and therefore, it does not consider the wording of the Order to be a "clerical error." Further, the Court agrees with Defendants that the retainer agreement between Plaintiffs and their counsel is a private contract to which the Court is not a party; consequently, the agreement does not serve as a proper legal basis to make Plaintiffs' proposed alteration. Plaintiffs have not provided the Court with any case law to refute this basic principle of contract law. On the other hand, Plaintiffs point out that several courts in this District recently have issued opinions awarding attorneys' fees and costs directly to the prevailing parties' counsel in FLSA cases. (R. 127, Pls.' Reply at 7); *see, e.g., Kurgan v. Chiro One Wellness Ctrs. L.L.C.,* No. 10-cv-1899, 2015 WL 1850599, at *1-*9 (N.D. Ill. Apr. 21, 2015); *Degorski v. Wilson,* No. 04-cv-3367, 2014 WL 6704561, at *1 (N.D. Ill. Nov. 26, 2014); *Bronzino v. Sheldon,* No. 09 C 1048, 2013 WL 1667911, at *1 (N.D. Ill. Apr. 17, 2013). However, these courts refer to the award of attorneys' fees and costs as going to both plaintiffs' counsel *and* plaintiffs in various sections. *See Kurgan,* 2015 WL 1850599, at *9; *Degorski,* 2014 WL 6704561, at *7; *Bronzino,* 2013 WL 1667911, at *6. Therefore, it appears that those courts were not contemplating this particular issue, and the exact phrasing of the attorneys' fee award those courts employed may have been unintentional.

The U.S. Supreme Court has not squarely addressed the issue of whether it is appropriate to award attorneys' fees and costs directly to the prevailing party or to their counsel under the FLSA fee-shifting statute, 29 U.S.C. § 216(b). However, it has addressed the issue in the context of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in *Astrue v. Ratliff,* 560 U.S. 586 (2010). The *Astrue* Court found that because the EAJA specifically directed courts to award attorneys' fees and other expenses to the prevailing party, the Government's practice of making

11

fees payable directly to the prevailing party's counsel was improper. 560 U.S. at 591-92

(observing that subsection (d)(1)(A) directs that courts "shall award to a prevailing party . . . fees

and other expenses . . . incurred by that party."). Here, in contrast to the EAJA, the FLSA fee-

shifting provision states in relevant part that "[t]he court in such action shall . . . allow a

reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. §

216(b). The statute does not specify exactly who the recipient of the attorney's fee award should

be. Therefore, the Court does not find it improper to direct the award of attorneys' fees and costs

to Plaintiffs' counsel.

Because Plaintiffs' requested alteration reflects the Court's original meaning, and is not

precluded under the terms of the FLSA fee-shifting provision, the Court will amend its Order to

clarify that the award of attorneys' fees and costs is granted to Plaintiffs' counsel. [5] Thus, the

Court's amended Order should read as follows: "Plaintiffs' motion for attorneys' fees and costs

[109] is granted in part and denied in part. Plaintiffs' counsel, Allison, Slutsky & Kennedy, P.C.,

---

[5] The parties have not provided the Court with any case law that directly addresses whether Plaintiffs' requested alteration is permissible under Rule 60(a). The Seventh Circuit has not spoken on this particular issue; the most analogous case the Court could locate was *HydroQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377 (7th Cir. 2011). There, the Seventh Circuit found that the district court's decision under Rule 60(a) to amend a fee award to one defendant to one that runs jointly and severally in favor of both defendants was "not a clerical move" because such an amendment "changes parties' legal entitlements." 632 F.3d at 386. Thus, the court concluded that an alteration under Rule 60(a) was improper, reasoning that Rule 60(a) "can be used only to correct clerical mistakes that subvert the court's intention with respect to the original judgment." *Id.* (citation omitted). However, *HydroQuest* can be distinguished from the instant case in several respects. First, *HydroQuest* involved amending an award of attorneys' fees from a single defendant to multiple defendants, whereas this case involves granting an award of attorneys' fees to Plaintiffs' counsel instead of Plaintiffs. Second, neither party argues that Plaintiffs' counsel is not entitled to the award, and thus the Court is not convinced that there is a change to the parties "legal entitlements." Finally, while this alteration is not a clerical one *per se*, unlike the district court in *HydroQuest*, it was plainly this Court's original intention that the attorneys' fees be paid to Plaintiffs' counsel. Therefore, the Court does not find that making Plaintiffs' proposed alteration under Rule 60(a) is precluded by the Seventh Circuit's holding in *HydroQuest*.

is awarded attorneys' fees in the amount of $86,112, and costs in the amount of $1,387.78

against Defendants Total Taxi Repair & Body Shop, LLC, Dispatch Taxi Management, LLC,

Dispatch Taxi Affiliation, Inc., GFST, Inc., Savas Tsitiridis, and Evgeny Freidman.

Accordingly, the Court grants Plaintiffs' Rule 60(a) motion to correct the Order.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to substitute parties under Rule 25(c) is

DENIED (R. 122), and their motion to correct or clarify under Rule 60(a) is GRANTED, (R.

122). The Court will amend its Order (R. 120) to reads as follows: Plaintiffs' motion for

attorneys' fees and costs [109] is granted in part and denied in part. Plaintiffs' counsel, Allison,

Slutsky & Kennedy, P.C., is awarded attorneys' fees in the amount of $86,112, and costs in the

amount of $1,387.78 against Defendants Total Taxi Repair & Body Shop, LLC, Dispatch Taxi

Management, LLC, Dispatch Taxi Affiliation, Inc., GFST, Inc., Savas Tsitiridis, and Evgeny

Freidman.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 25, 2015**

13